James **BELSER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–9909–CR–427.

Court of Appeals of Indiana.

April 20, 2000.

Terrance W. Richmond, Milan, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge

Defendant–Appellant James Belser (Belser) appeals his convictions of five counts of arson, a Class B felony, Ind.Code § 35–43–1–1. .

We affirm in part and reverse and remand in part.

Belser presents four issues for our review which we restate as:

1. Whether Belser's right against double jeopardy was violated by his convictions of five counts of arson, all of which involved the same fire in the same residence.

2. Whether the trial court erred in allowing the admission of opinion evidence.

3. Whether the trial court erred by limiting Belser's cross-examination of a State witness.

4. Whether the State produced sufficient evidence to support Belser's convictions.

On September 17, 1998, Belser and his girlfriend had an argument. Belser's girlfriend refused to let him sleep with her that night, and Belser retreated to the living room couch. Later in the evening, when everyone except Belser was in bed, a fire broke out in the house. Belser alerted everyone in the house and put out the fire. Following a jury trial, Belser was convicted of five counts of arson. This appeal ensued.

Belser contends that his convictions and sentences for five counts of arson violate his right against double jeopardy because they constitute multiple punishments for the same offense. Although Belser cites the double jeopardy provisions of both the Indiana Constitution and the Federal Constitution, his argument on this issue provides no analysis under either document. For purposes of finality, we will address both claimed violations.

 Our state supreme court has recently held that the statutory elements test and the actual evidence test are both components of the double jeopardy analysis for same offenses under the Indiana Constitution. *Richardson v. State,* 717 N.E.2d 32, 49–50 (Ind.1999). In so deciding, the Court held that two or more offenses are the same offense in violation of

Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.* at 49.

 We first address the statutory elements test. In this test, we inspect the charging instrument and the relevant statutes to identify the essential elements that must be established for a conviction. *Id.* at 50. This review considers only the essential elements and does not evaluate the manner or means by which the offenses are alleged to have been committed; the manner or means will be considered only if they comprise an essential element. *Id.* Each offense must contain at least one element which is separate and distinct from the other offense. *Id.* at 52.

 In this case, Belser was convicted and sentenced on five counts of arson with regard to the single fire. With regard to the five counts, Belser was charged as follows:

COUNT I

James G. Belser, on or about September 17, 1998, did, by means of fire, knowingly damage the dwelling of Andrea Ryans, located at 1353 North Ewing, without the consent of Andrea Ryans;

COUNT II

James G. Belser, on or about September 17, 1998, did, by means of fire, knowingly damage property, that is: residence located at 1353 North Ewing, of Stratford Group, Inc., under circumstances that endangered human life, that is: Karen Farrell [sic] was in the residence at time of fire;

COUNT III

James G. Belser, on or about September 17, 1998, did, by means of fire, knowingly damage property, that is: residence located at 1353 North Ewing, of Stratford Group, Inc., under circum-

stances that endangered human life, that is: Angela Hampton was inside the residence at time of fire;

COUNT IV

James G. Belser, on or about September 17, 1998, did, by means of fire, knowingly damage property, that is: residence located at 1353 North Ewing, of Stratford Group, Inc., under circumstances that endangered human life, that is: Lachea Evans was inside the residence at time of fire;

COUNT V

James G. Belser, on or about September 17, 1998, did, by means of fire, knowingly damage property, that is: residence located at 1353 North Ewing, of Stratford Group, Inc., under circumstances that endangered human life, that is: Qndriea Harris was inside the residence at time of fire;

\* \* \* \*

(R. 25–26). To gain a conviction of arson, the State was required to prove that Belser (1) by means of fire or explosive (2) knowingly or intentionally (3) damaged (4) the dwelling of Andrea Ryans (5) without the consent of Andrea Ryans. The State further had to prove, for Counts II through V, that Belser (1) by means of fire or explosive (2) knowingly or intentionally (3) damaged (4) the property of Andrea Ryans (5) under circumstances that endangered human life. Ind.Code § 35–43–1–1.

■ Having identified the essential elements of each charged offense, we find that the essential elements of the offense of arson as charged in Count I includes the element of damage to a persons' dwelling without that person's consent, an element not contained in the charges of arson contained in Counts II through V. Furthermore, the offense of arson as charged in Counts II through V requires circumstances that endanger human life. Under the statutory elements test, the offense in Count I contains at least one essential element that is separate and distinct from the other offenses charged in Counts II through V. However, Counts II through V require the same elements for their proof. Although the State charged Belser with a separate offense for each individual victim, it is not necessary that the State show endangerment to each particular person to convict Belser of arson as long as it provides proof of "circumstances that endanger human life." Thus, under the statutory elements test, there is no double jeopardy violation between Count I and Counts II through V. However, there is a violation between Counts II, III, IV and V. Therefore, only one of those four counts can stand.

■ We now turn to the second test, termed the "actual evidence test." An explanation of this test is set out in *Richardson:*

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

717 N.E.2d at 53.

■ In the present case, the evidence presented at trial shows that Belser and his girlfriend had an argument. She refused to let him sleep with her, so he moved to the living room couch. The facts further show that at some point in the evening, Belser filled the bathtub with water ostensibly so that he could take a bath. However, Belser never took a bath. Later in the evening, when everyone except Belser was in bed, a fire occurred on the kitchen floor. Belser woke the occupants of the house, and put out the fire with the water from the bathtub. The State's expert witness testified that in his opinion the fire had been intentionally set. He

further stated that the Molotov cocktail[1] device that was used to start the fire had been broken after it was put on the floor and ignited and that he did not believe that it had been thrown through the window as Belser claims.

The evidence proving the arson is the intentional setting of the fire on the kitchen floor in the house. The individuals listed in the information were in the residence at the time of the fire and were necessarily endangered by the fire. From the evidence presented, we find there to be more than a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of arson as charged in Count I to also have been used to establish the essential elements of arson as charged in Counts II through V. Thus, we find that Belser's right against double jeopardy was violated, and we remand this case to the trial court with instructions to vacate four of the five convictions of arson and sentence accordingly.

Furthermore, we note that the charges we examine today are merely enhanced charges of the base offense of arson. For instance, Count I in the present case is the base offense of arson with the addition that the property is a dwelling. This increases the offense from a Class D felony to a Class B felony. Similarly, Counts II through V begin with the base offense of arson and include the particular condition of endangerment to human life, which also enhances the offense from a Class D felony to a Class B felony. Belser has therefore been convicted and sentenced for five counts of arson based upon the intentional setting of one fire. We believe this double jeopardy violation is a hybrid of the double jeopardy violations Justice Sullivan discusses in his concurring opinion in *Richardson*. *See Richardson*, 717 N.E.2d at 55–57. As Justice Sullivan discusses in *Richardson*, Belser's convictions constitute a violation of double jeopardy because they are convictions and punishments for behavior (i.e., arson of a dwelling) that constitutes a base offense and which consists of the very same act (i.e., arson) as the basis of another crime (i.e., arson which endangers human life) for which the defendant has been convicted and punished. *Cf. Martin v. State*, 488 N.E.2d 1160 (Ind.Ct. App.1986), *reh'g denied, trans. denied* (holding that where only one fire in one dwelling was at issue, defendant could only be convicted of one count of arson).

Finally, because we remand this case for vacation of all but one of Belser's convictions based upon our finding that the convictions violate the double jeopardy clause of the Indiana Constitution, there is no need to launch a separate analysis of Belser's convictions under the federal constitution.

■ Next, Belser asserts that the trial court erred by allowing a State's witness to present opinion testimony as to whether a Molotov cocktail was actually thrown through the kitchen window and to express an opinion as to Belser's guilt. Ind. Evidence Rule 702(a) states that the trial court may allow a witness, who is qualified as an expert by knowledge, skill, experience, training, or education, to testify in the form of an opinion if scientific, technical or specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. However, witnesses may not testify as to opinions concerning intent, guilt or innocence in a criminal case. Ind. Evidence Rule 704(b). Further, admission of opinion testimony is within the discretion of the trial court. *O'Neal v. State*, 716 N.E.2d 82, 89 (Ind.Ct. App.1999), *reh'g denied, trans. denied.*

■ Prior to trial, Belser filed a motion in limine requesting the court to limit opinion testimony regarding whether the fire could have been started by an object

---

1. As the State's expert witness stated, a Molotov cocktail is a glass container, usually a glass bottle, filled with flammable liquid with a wick that is lit before the container is thrown. The container usually breaks against the object at which it has been thrown, and the flammable liquid is then splattered and ignited by the lit wick.

being thrown through the window of the house. This particular part of Belser's motion was denied by the trial court. During trial, the State's expert fire witness, Michael Tromm (Tromm), testified that, in his opinion, the floor-length sheet/curtain that had been pulled to one side of the kitchen window had actually been hanging across the entire window when the fire was started. He explained that he believed this to be true because the glass from the breaking of the window was not scattered throughout the kitchen but instead was below the window in a pile on the floor against the wall. Tromm further testified that based upon the placement of the pieces of glass, the sheet was down when the glass was broken, the sheet caught the pieces of glass and then the glass slid down the sheet to the floor.

Additionally, Tromm testified that he did not believe the Molotov cocktail was thrown through the window. Tromm stated that if the sheet were across the entire window in the kitchen when the Molotov cocktail was thrown through the window, it would also have been caught by the sheet just as the pieces of glass from the window. However, the Molotov cocktail had landed in a corner of the kitchen against an opposite wall. Moreover, Tromm testified that he did not believe the Molotov cocktail could have been thrown through the window because the window was covered on the outside by a screen made of a very durable material. He explained that it would be very difficult for the bottle containing the cocktail to pierce the screen of the window, much less the screen, the window, and the curtain.

Belser claims that this testimony was inadmissible opinion testimony and asserts that it is an opinion on the ultimate issue of guilt. We disagree.

As the State established during direct examination, Tromm had worked for the Indianapolis Fire Department for nineteen years and had been in the arson investigation unit for over four years. In that time, he had logged hundreds of hours of fire investigation training and had investigated numerous fires involving Molotov cocktails. We conclude that he was sufficiently qualified to testify as an expert witness under Evid. R. 702.

Additionally, we conclude that Tromm's testimony does not constitute an opinion on the ultimate issue of guilt. Tromm merely explained, based upon his expertise, the manner in which he believed this incident occurred. Simply because Tromm's testimony conflicts with that of Belser does not mean he is improperly commenting on Belser's guilt. In fact, it is customary for a State's witness, such as Tromm, to refute the defendant's version of events. That is precisely the reason the State called Tromm as a witness and is considered customary trial strategy. Consequently, we find that the trial court did not abuse its discretion in admitting Tromm's testimony.

■■■■ As a third claim of error, Belser asserts that the trial court erred by limiting his cross-examination of a State's witness. The Sixth Amendment right of confrontation requires that a defendant be afforded an opportunity to conduct a full, adequate, and effective cross-examination. *Buzzard v. State*, 712 N.E.2d 547, 552 (Ind. Ct.App.1999), *trans. denied.* In addition, the Indiana Constitution guarantees a defendant the right to face-to-face confrontation with witnesses against him. *Id.* However, this right is subject to the reasonable limits a trial court may impose upon cross-examination. *Id.* In such a situation, we will reverse only for a clear abuse of the trial court's discretion. *Id.* In order to show the trial court abused its discretion, a defendant must prove that he was prejudiced by the limits imposed by the trial court. *Id.*

■■■■ Here, Detective Wilson testified on behalf of the State at trial. The State questioned the Detective as to whether any testing had been done on the remains of the Molotov cocktail by the crime lab. The Detective responded that there is only

one crime lab for all crimes that occur in Marion County and that the testing in this particular case had not yet been completed. Belser complains that the State opened the door, yet he was not then allowed, on cross-examination of Detective Wilson, to delve into the subject of the crime lab.

A review of the record discloses that the court sustained the State's objections to Belser's cross-examination of Detective Wilson because the information Belser requested was not within the detective's realm of knowledge and/or was irrelevant to the case at bar. Belser's cross-examination of Detective Wilson consisted of the following colloquy:

Q [Defense Counsel]: Now in regards to the crime lab, there is a central crime laboratory for Marion County is that correct?

A [Detective Wilson]: Yes, sir.

Q: But there's many divisions in that crime lab, is that correct?

A: I don't know how it's comprised.

Q: Well for instance—

[Deputy Prosecutor]: Objection, he said he did not know.

COURT: Well that's true. I believe he said he didn't know how it's organized.

\* \* \* \* \* \*

Q: Have you ever had an investigation where you requested a fingerprint analysis?

A: Yes, sir.

Q: And would you actually submit to them some sort of a form or a written request for the fingerprint people over there to conduct an analysis?

A: I submit a card to the crime lab.

Q: Okay. And who do you think would—do you know who performs those?

A: No, sir.

[Deputy Prosecutor]: Judge, I'll object to the relevance.

COURT: Okay. I'm sustaining the objection.

\* \* \* \* \* \*

Q: Did you ever—did you ever have an investigation that required an analysis of hair or fiber?

[Deputy Prosecutor]: Judge, I'll object to relevance.

COURT: Okay I'm sustaining the objection.

(R. 512–514). We conclude that the trial court was well within its discretion in limiting Belser's cross-examination of the detective. Additionally, Belser makes no showing of prejudice based upon the court's limitation of his cross-examination of Detective Wilson. Thus, we find no error.

Finally, Belser contends that the State failed to present evidence sufficient to sustain his convictions of arson. We disagree.

 Our standard of review with regard to sufficiency claims is well settled. We neither weigh the evidence, nor judge the credibility of the witnesses, and we consider only the evidence favorable to the verdict and all reasonable inferences which can be drawn therefrom. *Newman v. State,* 677 N.E.2d 590, 593 (Ind.Ct.App. 1997). If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.* Further, we are mindful that the jury is the trier of fact and is entitled to determine which version of the incident to credit. *Barton v. State,* 490 N.E.2d 317, 318 (Ind.1986), *reh'g denied.* Moreover, arson is almost always subject to proof by circumstantial evidence, and we defer to the jury's determination that the defendant set the fire. *Wise v. State,* 719 N.E.2d 1192, 1200 (Ind. 1999).

 In order to obtain a conviction for arson, the State must prove beyond a reasonable doubt that (1) Belser (2) knowingly or intentionally (3) by means of fire or explosive (4) damaged (5) the dwelling

of another person (6) without the other person's consent. Ind.Code § 35–43–1–1. With regard to Counts II through V, the State was required to prove that (1) Belser (2) knowingly or intentionally (3) by means of fire or explosive (4) damaged (5) property of any person (6) under circumstances that endanger human life. Ind.Code § 35–43–1–1. Belser challenges the sufficiency of the State's evidence on the first factor with regard to all five counts.

 ■ The record reveals that Belser and his girlfriend, Angela Hampton (Hampton) began arguing earlier in the evening because Hampton had burned the raccoon Belser had started to cook. When the argument continued, Hampton asked Belser to leave their bedroom and sleep on the couch. Karen Ferrell (Ferrell), a friend of Hampton's, was sleeping on the couch. When Belser came into the living room and laid on the couch, Ferrell went into the bedroom and went to bed in the same bed with Hampton. Belser then became agitated and began ranting about the two women having a lesbian affair. At this point, the occupants of the house called the police to calm Belser down.

Later, everyone in the house, except Belser, had gone to bed. At least one of the occupants heard glass break and then heard Belser knocking on everyone's bedroom doors alerting them to the fire. The occupants of the house gathered outside on the front porch. Although everyone was nervous at this time, Belser was very calm. Belser stated to the other occupants that, although he had allegedly filled the bathtub with water earlier in the evening to take a bath, they should be happy he did not take his bath because he was then able to save their lives by using the water from the bathtub to put out the fire. Once the firemen arrived, Belser took them inside and explained his version of how the fire started. One of the officers on the scene testified at trial that, for a fire victim, Belser knew a lot about the fire and stated that Belser was very animated in his explanation of the night's events.

The State's expert witness, Michael Tromm (Tromm) testified that the screen on the window was made of a very tough material, making it unlikely that a bottle was thrown through it. He further testified, as discussed previously, that the glass from the broken window was not scattered around the kitchen but was instead in a pile against the wall beneath the window. This led him to conclude that the curtain had been down (occupants of the house had testified that the curtain was always down across the entire window) when the window was broken and that the curtain "caught" the glass as the window was broken. The glass then slid down to the floor instead of scattering throughout the kitchen. Further, Tromm stated that the angle of the window was such that it was unlikely that a thrown bottle could have landed in the corner of the kitchen where the fire started and that the glass from the bottle, like the glass from the window, was in a pile rather than scattered on the kitchen floor. Finally, Tromm testified that in his opinion the fire was started with an accelerant and that the Molotov cocktail device was not thrown. Rather, he believed that the bottle was broken after it was set on the floor and ignited.

 ■ In this case, the evidence focused on four circumstantial elements of guilt: presence at the scene, conduct before and after the fire, proof that the fire was intentionally set, and motive. Although standing alone, evidence of motive, presence, or opportunity is insufficient to prove guilt, *McGowan v. State,* 671 N.E.2d 1210, 1214 (Ind.Ct.App.1996), here the evidence, taken together, was sufficient to link Belser with the fire. Moreover, it is well within the jury's province to disbelieve Belser's version of the events. *Barton,* 490 N.E.2d at 318. Thus, we find that the State presented evidence sufficient to support a conviction of either arson of a person's dwelling without that person's consent or arson of the property of another person under circumstances that endanger human life.

In conclusion, we reverse four of Belser's convictions of arson and remand to the trial court with instructions to vacate all but one of the five counts and sentence accordingly. We find that the trial court properly allowed the testimony of the State's expert witness and that the trial court correctly limited Belser's cross-examination of the State's detective. We further find that the State presented sufficient evidence to sustain Belser's conviction of either arson.

Affirmed in part, reversed and remanded in part.

BAILEY, J., and MATTINGLY, J., concur.