**Robin L. MONTGOMERY,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 58A01–0304–CR–139.**

Court of Appeals of Indiana.

March 22, 2004.

Alison T. Frazier, Eckert Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Matthew D. Fisher, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Robin L. Montgomery ("Montgomery") appeals his convictions for two counts of arson, as Class B felonies,[1] and fraud, a Class D felony.[2] We reverse his convictions and remand for a new trial.[3]

### Issues

Montgomery raises eight issues, one of which we find dispositive: whether counsel rendered ineffective assistance. In order to determine whether retrial is permissible, we also examine the sufficiency of the evidence supporting Montgomery's convictions. Finally, we address whether Mont- gomery's convictions for the two arson counts violate principles of double jeopardy.[4]

### Facts and Procedural History

Montgomery owned a house in Rising Sun, Indiana, wherein he and his girlfriend Jodi Gould ("Gould") lived. On April 3, 2000, Gould was vacuuming in a downstairs bedroom when she accidentally vacuumed an extension cord to an antique lamp. The lamp switch did not work after this incident. That evening, Montgomery and Gould had an argument, and Gould left the house to go to the American Legion. According to Gould, Montgomery called Gould after she left and told her that he was going to "shoot [her] dog and have a wiener roast with [her] stuff." Tr. 578.

That night, John Wolfe ("Wolfe"), a neighbor who lived across the street from Montgomery's house, observed Montgomery leave the residence while Wolfe was smoking a cigarette on his front porch. Approximately five or six minutes later, Wolfe went inside. Wolfe noticed an "orange glow" through his bathroom's privacy window, returned to the front porch and saw flames "shooting out the lower left side" of Montgomery's house. Tr. 373. Wolfe called 9–1–1 and reported the fire at 12:13 a.m.

After responding to the scene, Deputy Rodney Rimstidt ("Deputy Rimstidt") of the Ohio County Sheriff's Department located Gould at a hotel and interviewed her to determine what caused the fire. Gould told Deputy Rimstidt that Montgomery

---

1. Ind.Code § 35–43–1–1(a)(1), (a)(3).

2. Ind.Code § 35–43–5–4(10).

3. We heard oral argument in this case on February 23, 2004 at the Oldenburg Academy in Oldenburg, IN. We thank counsel for their advocacy and extend our appreciation to Oldenburg Academy for hosting the event.

4. We do not address Montgomery's claims of error in the admission of evidence, prosecutorial misconduct, the State's failure to produce exculpatory evidence, or cumulative error.

told her he was going to kill her dog and burn down the house. Deputy Rimstidt also interviewed Montgomery, who told Deputy Rimstidt that he had heard about the fire from his brother. Deputy Rimstidt checked Montgomery's Caller ID system, but did not discover any incoming calls from Montgomery's brother.

Deputy Andrew Long ("Deputy Long") of the State Fire Marshall's Office investigated the fire scene and concluded that two fires had been set, one in the middle bedroom and one in the upstairs bedroom. Deputy Long based his opinion on the burn patterns on the walls and ceilings, although Deputy Long had never received any formal training concerning fire pattern recognition. Deputy Long tested the scene for accelerants using a hydrocarbon detector, and although the detector signaled the presence of hydrocarbons, the samples taken from the scene ultimately tested negative for the presence of accelerants. Long did not inspect any electrical cord fragments later discovered by an insurance company investigator in the basement underneath where the first floor bedroom previously existed. One section of an extension cord demonstrated "beading," which is indicative of arcing in an electrical short. Tr. 733–34.

On May 22, 2001, a grand jury indicted Montgomery on two counts of arson and one count of fraud. Prior to trial, the State subpoenaed two insurance investigators, Mark Schockman ("Schockman") and Michael McGwire ("McGwire") to testify concerning their investigation of the fire scene. However, at trial, the State rested without calling either witness. Montgomery did not subpoena either witness before trial and, upon realizing that the State did not intend to call Schockman and McGwire as witnesses, was unable to serve subpoenas on them in time to have them testify at trial. Although Schockman and McGwire

concluded in their investigative reports that the fire had been set, Schockman did not find evidence of a second fire in the upstairs bedroom, and McGwire could not rule out the extension cord as a source of the fire. Montgomery did not move to continue the trial in order to have Schockman or McGwire appear; instead, Montgomery read McGwire's discovery deposition to the jury. While Montgomery also took Schockman's deposition, Montgomery did not read any portion of his deposition to the jury.

On December 23, 2002, the jury found Montgomery guilty on all counts. The trial court sentenced Montgomery to twelve years, with six years suspended. This appeal ensued.

## Discussion and Decision

### I. Ineffective Assistance

#### A. Standard of Review

It is well-settled that to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind.1999). When analyzing whether counsel's performance was deficient, we begin with the presumption that counsel's performance was effective. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind.1998). The defendant must rebut this presumption through "strong and convincing evidence." *Id.*

Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind.1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the re-

sult of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996).

### B. Analysis

■ Montgomery points to several alleged errors made by trial counsel, but we focus upon the failure of Montgomery's trial counsel to subpoena two of the State's expert witnesses or, in the alternative, request a continuance when the State did not call these experts and they were unavailable for Montgomery's defense.

■ Here, performance by Montgomery's trial counsel was deficient. A defendant has the burden of insuring that witnesses who may aid in his or her defense are called. *Jenkins v. State,* 627 N.E.2d 789, 793 (Ind.1993). Although Montgomery's counsel attempted to mitigate the absence of McGwire by reading the transcript of McGwire's discovery deposition to the jury, trial counsel did not attempt to do the same with Schockman's deposition, nor did counsel make an offer to prove what Schockman's testimony would have been. *See Isom v. State,* 585 N.E.2d 1347, 1350 (Ind.Ct.App.1992) (deficient performance by failing to make offer to prove absent witness's testimony). Further, Montgomery's counsel did not move for a continuance in order to secure Schockman and McGwire as witnesses. These errors fall below an objective standard of reasonableness based on prevailing professional norms. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ Having found deficient performance, we next address whether counsel's performance prejudiced Montgomery. The absence of Schockman and McGwire was more than a minor omission. While both investigators concluded that the fire was set, their opinions differed from that of Deputy Long, the State's fire expert. Schockman apparently did not find any evidence of a second "set" fire upstairs, contrary to Deputy Long's conclusion.[5] In this respect, Schockman's conclusion is consistent with Montgomery's expert, Thomas Hulse, who concluded that the fire on the second floor was a "drop down fire," caused by burning ceiling material that dropped to the floor and bed in the upstairs bedroom. Tr. 743. McGwire discovered the electric cord fragments in the area where Deputy Long determined that the fire was set, and McGwire could not rule out the electric cord or the antique lamp as the source of the fire. This is also consistent with Hulse's conclusion that the fire was the result of an electrical fire.

■ In this case, there was only circumstantial evidence of Montgomery's guilt. Indeed, in what became essentially a "battle of experts," corroborating expert testimony would have been particularly powerful, and in its absence, when available, substantially prejudicial. Moreover, the introduction of McGwire's discovery deposition is an inadequate substitute to live cross-examination when the only reason for McGwire's unavailability was counsel's failure to serve a subpoena. Without this corroborating testimony, we conclude that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Games v. State,* 690 N.E.2d 211, 213 (Ind.

---

5. In closing argument, Montgomery's trial counsel referred to Schockman's deposition transcript, which was reviewed by Hulse during his investigation. However, this deposition was never introduced at trial.

1997). Accordingly, we reverse Montgomery's convictions.[6]

## II. Sufficiency of the Evidence

 We must next determine whether retrial is permissible. Federal double jeopardy principles prohibit multiple convictions for the same offense. Nevertheless, these principles do not prohibit the successive prosecution of a defendant who initially succeeds in setting aside his first conviction because of some error in the proceedings leading to the conviction. *Berry v. State,* 725 N.E.2d 939, 944 (Ind. Ct.App.2000) (citing *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). However, retrial is not permissible if insufficient evidence supported the conviction. Accordingly, we consider all the evidence admitted by the trial court, including erroneously admitted evidence. *Id.* If the evidence as a whole would have been sufficient to sustain the judgment, double jeopardy does not attach. *Id.*

## A. Arson of dwelling of another

 To convict Montgomery of arson of a dwelling as a Class B felony, the State was required to establish that he: (1) by means of fire or explosive; (2) knowingly or intentionally damaged (3) the dwelling of another person without her consent. Ind.Code § 35–43–1–1(a)(1). Montgomery contends that because Gould was not at the house at the time of the fire, there was no evidence supporting an inference that Montgomery's home was her "dwelling." We disagree.

 "Dwelling" is defined at Indiana Code Section 35–41–1–10 as "a person's home or place of lodging." Gould testified that she had been living with Montgomery for approximately six months prior to the fire, and kept all of her possessions at the house. This testimony was sufficient to establish Montgomery's house as Gould's dwelling. Further, an eyewitness saw Montgomery leave his residence approximately five to ten minutes before the house was engulfed in flames. Deputy

---

**6.** Although we reverse Montgomery's convictions based upon ineffective assistance, we are compelled to admonish the prosecutor for conduct that gave rise to the ineffectiveness claim. The prosecutor included McGwire and Schockman on the State's witness list, subpoenaed the two witnesses, and both witnesses were in the courthouse on Thursday, the day before the State rested its case-in-chief. Thursday evening, the prosecutor informed both witnesses that they would not be needed and could leave. The prosecutor did not inform Montgomery, whose witness list included those witnesses listed by the State, App. at 251, or seek permission from the trial court to release the witnesses from the court's subpoena. This situation is distinguishable from *Wisehart v. State,* 693 N.E.2d 23 (Ind. 1998), in which the prosecutor stated before trial that he would subpoena a witness but may or may not call the witness, and later did not have the witness available at trial. *See Wisehart,* 693 N.E.2d at 58 (finding no misconduct). We find it immaterial that the prosecutor told counsel only that the wit-

nesses "were subpoenaed, not that they would be there." State's Br. at 12. Once a witness is served with a subpoena, the witness is under court order to appear, and cannot be unilaterally dismissed without permission from the court that issued the subpoena. Further, given the substantial time and cost that go towards service of process, duplicative service of subpoenas is unnecessary and unwarranted when one party has clearly served the subpoena prior to trial.

However, because Montgomery's trial counsel failed to object to the prosecutor's actions, we must address the conduct as fundamental error. *Booher v. State,* 773 N.E.2d 814, 817–18 (Ind.2002). As Montgomery presents no argument on appeal that the prosecutorial conduct also constituted fundamental error, Montgomery has not demonstrated that the conduct makes "a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm." *Id.* at 817.

Long opined that the fire was intentionally set. Finally, Gould testified that she was devastated by the fire and lost everything she owned. Accordingly, the evidence was sufficient to support a conviction for arson of a dwelling.

### B. Arson damaging property in excess of $5,000.00

■ To convict Montgomery of arson of property as a Class B felony, the State must establish that he: (1) by means of fire or explosive; (2) knowingly or intentionally damaged; (3) property of another person without her consent; (4) with a pecuniary value of at least $5,000.00. Ind. Code § 35–43–1–1(a)(3). Montgomery argues that the State failed to establish that the fire damaged more than $5,000.00 of Gould's property. Specifically, Montgomery contends that Gould's speculation on the value of items that were lost in the fire is insufficient to establish the value of those items. Again, we disagree.

Gould testified that after the fire, she accounted for items that were missing and approximated the value of these items at $30,000.00. Although Montgomery objected to an itemized list prepared by Gould, Montgomery made no objection to Gould's testimony on valuation and made no attempt to cross-examine her on that issue. In essence, Montgomery asks this court to reweigh Gould's credibility and determine that her testimony is without merit. This we will not do. As discussed in Section II.A, the evidence was sufficient to establish the first three elements of arson. Accordingly, the evidence is sufficient to support Montgomery's conviction on this count.

### C. Fraud

Finally, to convict Montgomery of fraud, the State must establish that he: (1) knowingly and with intent to defraud; (2) made, uttered, presented, or caused to be presented to an insurer; (3) a claim statement that contained false, incomplete, or misleading information concerning the claim. Ind.Code § 35–43–5–4(10).

■ Montgomery contends that the evidence was insufficient to support a conviction for fraud because the indictment alleged that fraud occurred between April 4, 2000 and May 10, 2000, but the Proof of Loss form was not notarized until May 23, 2000. We note, however that to be convicted of fraud, Indiana Code Section 35–43–5–4(10) does not require a false claim statement to be presented to the insurer on a particular date.[7]

■ The evidence here showed that Montgomery submitted to his insurer the Proof of Loss form, signed by Montgomery, which provided: "The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant ... and no attempt to deceive the company, as to the extent of said loss, has been in any manner been made." State's Ex. 62. As we previously determined that sufficient evidence exists to support the arson convictions, the jury could conclude that Montgomery's statement that he did not cause the loss was false, and thus, by submitting a false claim statement, Montgomery intended to defraud his insurer. Accordingly, the evidence is sufficient to support Montgomery's conviction for fraud.

---

7. Further, by failing to object during the trial to the variance in proof, Montgomery waived any error in the variance between the date of the offense as charged in the information and as proved at trial. *See Hobson v. State,* 495 N.E.2d 741, 746 (Ind.Ct.App.1986) (failure to object to one to two year variance between date of offense as charged in information and proved at trial waives issue).

### III. Double Jeopardy[8]

Indiana's Double Jeopardy Clause is embodied in Article 1, Section 14 of the Indiana Constitution, which provides, "No person shall be put in jeopardy twice for the same offense." Our Supreme Court has concluded that this provision "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). In addition to the traditional notion that double jeopardy bars subsequent prosecution, our Supreme Court has construed Indiana's Double Jeopardy Clause as also prohibiting multiple punishments. *Id.*

 In *Richardson*, our Supreme Court established a two-part test for analyzing double jeopardy claims. Specifically:

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* at 49. If the evidentiary facts that establish one offense establish only one or several, but not all of the essential elements of the second offense, there is no double jeopardy violation. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002).

 The statutory elements test and the actual evidence tests are separate considerations under the double jeopardy analysis. *Richardson*, 717 N.E.2d at 53. Thus, even where the statutory elements define the offense as capable of being committed by disparate acts, the convictions may nonetheless constitute a violation of double jeopardy "if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." *Castillo v. State*, 734 N.E.2d 299, 303 (Ind.Ct.App.2000); *see also Richardson*, 717 N.E.2d at 53.

In addition to the statutory elements and actual evidence tests, Indiana courts have " 'long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson.*' " *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind.2002)).

 Montgomery directs us to *Clark v. State*, 732 N.E.2d 1225 (Ind.Ct.App.2000) and *Belser v. State*, 727 N.E.2d 457 (Ind. Ct.App.2000), *trans. denied*, to support his contention that only one arson conviction may result from a case with only one fire. In *Clark*, this court found a violation of double jeopardy principles for multiple convictions of attempted arson of a dwelling, attempted arson for hire, and attempted arson with intent to defraud, as all three convictions stemmed from the same single act of arson. In *Belser*, this court similarly found a double jeopardy violation for convictions of arson of a dwelling and arson of property that endangered human life.

The State points to the recent case of *Land v. State*, 802 N.E.2d 45 (Ind.Ct.App. 2004), *trans. pending*, decided by a different panel of this court. There, the court concluded that convictions for arson of a dwelling and arson of personal property, caused by one fire, did not constitute double jeopardy. *Id.* at 52. We distinguish *Land*, however, because the two convic-

---

8. We address Montgomery's double jeopardy argument under Indiana law, as Montgomery makes no separate argument under the Fifth Amendment of the United States Constitution.

tions involved two victims. Here, Gould was the victim of the arson of her dwelling and the arson of her personal property.

The State argues that because *Clark* and *Belser* were decided prior to our Supreme Court's clarification of the actual evidence test in *Spivey*, we should not rely on those cases. Upon reviewing *Clark* and *Belser*, however, double jeopardy in those cases was based on our statutory and common law rather than the constitutional analysis of the *Richardson* actual evidence test. *See Clark*, 732 N.E.2d at 1229 (multiple convictions barred by statutory and common law rather than upon constitutional grounds); *Belser*, 727 N.E.2d at 462 (hybrid double jeopardy violation involving base offense in which very same act formed basis of second conviction). We find that Montgomery's arson convictions are similarly barred under the common law. *Cf. Martin v. State*, 488 N.E.2d 1160, 1162 (Ind.Ct.App.1986) (single act of arson of dwelling supported only one count of arson).

## IV. Conclusion

For the foregoing reasons, we reverse Montgomery's convictions and remand for a new trial.

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.