**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARAY CARTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1304-CR-127 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jerome Frese, Judge
Cause No. 71D03-1104-FB-71

**November 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Laray Carter appeals his conviction for arson, a Class B felony, and resisting law enforcement, a Class A misdemeanor. Carter raises one issue which we restate as whether sufficient evidence was presented to sustain his convictions. Concluding that sufficient evidence was presented, we affirm.

## Facts and Procedural History

On the morning of April 23, 2011, the South Bend Police Department dispatched Officer Wiegand to a burglary alarm at a residence on North Huey Street. Officer Wiegand arrived on scene in uniform and in his marked car and pulled up just south of the house. He saw a man, later identified as Carter, step out of the house and onto the porch, carrying a red gas can in his left hand. After stepping out of the house, Carter first looked right and then looked left in the direction of Officer Wiegand. He then proceeded to quickly walk northbound away from the house.

Officer Wiegand pulled forward toward the house and noticed that flames and smoke were coming from inside the house. He advised dispatch of the fire and then pursued Carter on foot. Officer Wiegand ordered Carter to stop and get on the ground multiple times, but Carter refused. Carter continued northbound behind the houses. At this time, Officer Bortone arrived on the scene and also ordered Carter to stop and get on the ground. Again, Carter refused to comply with either officer's orders. Because Carter refused to comply and neither officer knew whether he was armed, Officer Wiegand used his taser to subdue Carter. Carter was handcuffed and placed inside a police car while the officers collected the remaining evidence.

2

After confirming that the fire was out, Officer Wiegand and the other officers on the scene inspected the house. The officers noted the house was currently inhabited, evidenced by the furniture and fresh food inside. The fire had burned through the carpet and scorched the hardwood floors in the living room. The lock for the front door was on the ground; however, all other doors and windows were secured and undisturbed. Officer Wiegand also noticed a boot print on the front door. Police seized Carter's right boot and submitted it along with the boot print for comparison. A forensic scientist with the Indiana State Police Laboratory testified at trial that after comparing the boot size, shape, and tread design to the boot print, it was possible that Carter's right boot could have made the impression on the front door.

Police located a red gas can behind one of the houses just north of the fire scene. The gas can, a separate vial of the yellow liquid contained in the gas can, and a section of the burned carpet from the house were submitted for analysis. Expert witness John Chester with the Indiana State Police Laboratory testified at trial that the yellow liquid in the vial was gasoline. Further, he determined that the section of burned carpet submitted for analysis contained gasoline.

While the police conducted their investigation, Carter remained alone inside the police vehicle. The vehicle's recording system recorded Carter saying to himself that he was upset with his girlfriend Tasha Tyce and complaining that she never came home that evening. Moreover, after being read his Miranda rights, he agreed to speak with Officer Hasbrook. During the interview with Officer Hasbrook, Carter stated that he and Tyce were on different pages and that she cheats on him.

Tyce testified that for the past seventeen years, she and Carter had been in a romantic relationship with the understanding that they could see other people. Tyce stated that she lived in two residences, including the house on North Huey Street, the scene of the fire. She testified that although they both lived at the North Huey Street house, only her name was on the lease agreement. According to Tyce, both she and Carter had keys to the home and the code to the alarm system. The evening before the fire, Carter and Tyce went to separate bars, and she did not return to North Huey Street until approximately 9:00 a.m. the following morning. Tyce further testified that the carpet was not damaged when she left the house, and she never gave Carter permission to set fire to the carpet.

Captain Robert Brechtl of the South Bend Fire Department testified that he found irregular burn patterns in the carpet, likely resulting from an ignitable liquid being poured onto the carpet. He concluded that the fire started on the living room floor and was ignited with an open flame, rather than resulting from a fire spread from an accidental cause. Captain Brechtl testified that he was able to come to a firm determination as to the origin of the fire because the fire was localized and extinguished relatively quickly.

The State charged Carter with arson, a Class B felony, and resisting law enforcement, a Class A misdemeanor. A jury returned a verdict of guilty on both counts. Carter was sentenced to an aggregate term of ten years. Carter now appeals his convictions.

<u>Discussion and Decision</u>

I.    Standard of Review

Our standard of reviewing a sufficiency claim is well-settled: we do not assess witness credibility or reweigh the evidence, and "we consider only the evidence that is

4

favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction." Staten v. State, 844 N.E.2d 186, 187 (Ind. Ct. App. 2006), trans. denied. "We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt." Id.

## II.    Arson

To convict Carter of arson as a Class B felony, the State was required to prove beyond a reasonable doubt that Carter, by means of fire, knowingly or intentionally damaged the dwelling of another person without the other person's consent. Ind. Code § 35-43-1-1(a). Moreover, arson is almost always proven by circumstantial evidence, and we defer to the jury's determination that the defendant set the fire. Wise v. State, 719 N.E.2d 1192, 1200 (Ind. 1999).

On appeal, Carter argues that there was insufficient evidence to convict him of arson because the State provided no evidence that he was seen pouring the gasoline or lighting the fire and no fingerprints were recovered from the gas can. However, a lack of direct evidence is insufficient grounds to reverse an arson conviction. The State may rely on circumstantial evidence such as presence at the scene, conduct before and after the fire, proof that the fire was intentionally set, and motive to prove his guilt. Belser v. State, 727 N.E.2d 457, 465 (Ind. Ct. App. 2000) trans. denied.  Although in isolation, evidence of motive, presence, or opportunity is insufficient to prove guilt, collectively such evidence may be sufficient to prove guilt. Id.

Here, Carter was the only person present at the scene of the fire. Officer Wiegand saw Carter leaving the scene of the fire carrying a red gas can out of the house. The front door was kicked in, and the boot print found on the front door resembled the sole of the right boot Carter was wearing when he was apprehended.

Additionally, Carter's conduct after the fire further supports the jury's conclusion that Carter set the fire. Carter ran from the scene of the fire when he saw Officer Wiegand. Both Officer Wiegand and Officer Bortone ordered Carter to stop and get on the ground, but he refused and continued running. Evidence of flight can show a defendant's consciousness of guilt. Brown v. State, 563 N.E.2d 103, 107 (Ind. 1990). While running from the police officers, Carter also dropped the red gas can he was seen carrying out of the house.

Moreover, evidence of a motive, although not required, provides additional circumstantial evidence to support the inference that Carter started the fire. Carter was clearly angry and frustrated with his girlfriend. For example, Carter was recorded saying that he was upset with his girlfriend and that she never comes home. He told police, during an interview, that Tyce cheats on him and that the two of them were on different pages. Therefore, given the fact that Carter was the only person present at the scene of the fire, was seen with a red gas can that contained gasoline, and expressed anger and frustration with Tyce, it was reasonable for a jury to conclude that Carter started the fire. Bradford v. State, 675 N.E.2d 296, 299 (Ind. 1996).

As to the remaining elements, the State must also prove that the fire's source was something other than accidental. Bland v. State, 468 N.E.2d 1032, 1035 (Ind. 1984). Testimony by an expert witness such as a fire investigator can provide sufficient evidence

6

to support the verdict of the jury. Id. Captain Brechtl testified that he concluded the fire was intentionally set for several reasons: the fire occurred on the living room floor and was ignited with an open flame; the fire caused irregular burn patterns and was contained to the small area where the ignitable fluid was poured; and the red gas can that Carter was seen carrying out of the house and that was later recovered near the house actually contained gas. The expert testimony coupled with the circumstantial evidence is sufficient to support a jury's conclusion that the fire was intentionally set rather than caused accidentally.

The State must also prove that the fire damaged the dwelling of another person. When defining the term dwelling, Indiana courts have given the term its plain and usual meaning as a "home or settled residence for a person and his or her personal possessions. White v. State, 846 N.E.2d 1026, 1031 (Ind. Ct. App. 2006) trans. denied. The house contained fresh food and furniture, indicating it was currently inhabited as a residence. Tyce testified to the fact that although both she and Carter lived at North Huey Street, only her name was on the lease agreement. As for it being the dwelling of "another person," Tyce's testimony along with the personal possessions found inside the house are sufficient for a jury to conclude this was Tyce's dwelling.

Finally, the State must prove that Tyce did not consent to Carter setting the carpet on fire. Tyce testified that when she left the house on April 22, the carpet was not damaged. When she returned the following morning, the carpet and floor had been damaged by a fire. Further, she stated that she did not give Carter permission to set fire to the house. Tyce's testimony provides sufficient evidence for a jury to conclude that Tyce did not consent to the fire being set.

Therefore, the evidence presented was sufficient to prove Carter committed the offense of arson, and we affirm Carter's conviction.

### III.    Resisting Law Enforcement

Carter asserts in his statement of the issues that he is also challenging the sufficiency of the evidence supporting his resisting law enforcement conviction. However, he does not support his contention in the argument section of his brief by identifying which elements of the offense he contends were not proven by explaining in what other manner the evidence was insufficient to support the resisting law enforcement conviction. Therefore, Carter has forfeited the issue. Ind. Appellate Rule 46(A)(8)(a); Pinkston v. State, 821 N.E.2d 830, 842 (Ind. Ct. App. 2004) (stating failure to present a cogent argument constitutes forfeiture of an issue), trans. denied.

### Conclusion

Sufficient evidence was presented to sustain Carter's convictions, and therefore we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.