Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2014, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES EDWIN GARDNER, III, )
)
    Appellant-Defendant, )
)
        vs. )    No. 45A03-1307-CR-259
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-0912-FB-128

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

James Edwin Gardner, III, appeals his conviction of arson, a Class B felony. Ind. Code § 35-43-1-1 (2002). We affirm.

## ISSUE

Gardner presents one issue for our review, which we restate as: whether there was sufficient evidence to support the conviction of arson.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict follow. In 2006 and 2007, Gardner had a relationship with Kaneka Turner. At some point in 2007, Turner ended the relationship; however, Gardner continued to contact Turner, causing her to call the police on several occasions and to obtain a protective order against him in May 2008.

On October 9, 2008, Gardner called Turner's cell phone. Turner was in an appointment and did not answer the phone. Gardner continued to call, and Turner eventually answered the phone and told him to stop calling. Gardner did not heed Turner's request and continued to call her cell phone. Later in the day, Turner again answered and told Gardner to stop calling. Gardner responded, "You want me to stop calling you? Well, b****, when you get home, you won't have a home." Tr. p. 493. On her way home, Turner saw smoke in the sky in the direction of her house, and when she arrived home, she found her house on fire. The fire had started in her bedroom, and fire investigators concluded the fire was intentionally set using an accelerant. The house was deemed uninhabitable.

Turner moved to a new residence but did not inform Gardner of her new address. At some point, Gardner discovered Turner's new address by following her brother to her new house. Gardner continued calling Turner, and, on December 10, 2008, when she told him to stop, he said, "You want me to burn that house down too?" *Id.* at 515. Turner replied that he did not know her new address. In response, Gardner sent her a text message containing the house number of her new residence. When Turner returned home that day, a friend of Gardner's was sitting in his red Mustang on the street near the end of her driveway. As Turner drove up her driveway, she saw Gardner running across the front yard away from the house. Turner then discovered that the basement door of her new house was burned and charred. She called the police, but she did not call the fire department because the fire was out by the time she discovered it.

Megan Cecil, who lives in the area, testified that on December 10, 2008, she was delivering some documents and was driving down a narrow alley when she encountered a person in a red car. She noted that the person did not move the car over to give her room to pass, as is customary, and the person would not look in her direction. After she delivered the documents, Cecil returned to the area where she had seen the red car and noticed that the car was still there. As she pulled up near the car, it sped off.

The police officer who responded to Turner's call testified that the screen on the screen door was cut, and the wooden door was charred. Another police officer testified that the police department ran the license plate number for the red Ford Mustang and obtained information on the owner. The officer testified that the owner's address was

3

less than a block away from Gardner's address, and Turner testified that Gardner did not have a car.

In addition to other charges, Gardner was charged with two counts of arson for the October 2008 fire and one count of arson for the December 2008 fire, all as Class B felonies. A jury trial in April 2012 resulted in a deadlocked jury on the three counts of arson, although the jury found Gardner guilty of several other charges. In May 2013 Gardner was re-tried on five charges, including the three counts of arson. This jury trial resulted in a guilty verdict for the December 2008 arson and verdicts of not guilty on both October 2008 arson charges. In this appeal Gardner challenges his conviction of arson for the December 2008 fire.

## DISCUSSION AND DECISION

Gardner contends that the State presented insufficient evidence to sustain his conviction of arson for the December 2008 fire at Turner's residence. Particularly, he argues that the State failed to prove that the fire was intentionally set and that it was set by him.

Arson is almost always subject to proof by circumstantial evidence. *Belser v. State*, 727 N.E.2d 457, 464 (Ind. Ct. App. 2000) (citing *Wise v. State*, 719 N.E.2d 1192, 1200 (Ind. 1999)), *trans. denied.* In reviewing the sufficiency of circumstantial evidence leading to a conviction, we use the same standard of review as when the evidence is direct. *McGowan v. State*, 671 N.E.2d 1210, 1214 (Ind. Ct. App. 1996). When reviewing claims of insufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. *Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App.

4

2008). We instead consider only the evidence that supports the conviction and any reasonable inferences to be drawn therefrom. *Id.*

In this case, the evidence focused on three circumstantial elements of guilt — motive, conduct before the fire, and presence at the scene. Gardner's violent nature toward Turner since she broke off their relationship in 2007 resulted in Turner obtaining a protective order in 2008. Gardner was upset with Turner for ending their relationship and for not answering his persistent phone calls. In addition, Gardner was unwilling to heed Turner's requests to leave her alone and stop calling her. Most notably, Gardner repeatedly called Turner on December 10, 2008, and Turner refused to answer the phone. When Gardner continued to call, Turner answered the phone and told him to stop calling. Gardner responded, "You want me to burn that house down too?" Tr. p. 515. Turner's previous residence, specifically her bedroom, had been intentionally set on fire using an accelerant just two months prior, rendering the house uninhabitable. When Turner arrived home, Gardner's friend was waiting in his car at the end of Turner's driveway, and Gardner ran across the front yard away from Turner's house. Turner found her screen door cut and the wooden door charred.

Standing alone, evidence of motive, presence, or opportunity is insufficient to prove guilt; however, evidence of such factors collectively may be sufficient to link a defendant to a fire. *Belser*, 727 N.E.2d at 465. Additionally, we defer to the jury's determination that the defendant set the fire. *See id.* at 464 (citing *Wise*, 719 N.E.2d at 1200). The evidence here sufficiently links Gardner to the fire at Turner's residence on December 10, 2008 so as to support his conviction of arson.

## CONCLUSION

For the reasons stated, we conclude there was evidence sufficient to sustain Gardner's conviction of arson.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.