Dorsey MATHEWS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0406–PC–493.

Court of Appeals of Indiana.

March 31, 2005.

Victoria Ursulskis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial in May 1995, Dorsey Mathews was convicted of Murder, six counts of Arson, as Class A felonies, and two counts of Arson, as Class B felonies. The trial court sentenced him to a total term of 145 years. In May 2004, Mathews filed a Motion to File a Belated Notice of Appeal under Indiana Post–Conviction Rule 2(1), which the trial court granted. He now appeals and presents the following issues for review:

1. Whether the trial court committed fundamental error when it instructed the jury on murder.

2. Whether Mathews' multiple arson convictions violate double jeopardy.

3. Whether the trial court erred when it imposed consecutive sentences.

4. Whether Mathews' sentence is inappropriate in light of his character and the nature of his crimes.

We affirm in part, and reverse and remand in part.

### FACTS AND PROCEDURAL HISTORY

In September 1994, Mathews and his wife Peggy were separated. On the evening of Friday, September 16, 1994, Mathews was upset because he could not find Peggy. Mathews' stepdaughter, Katherine Kelshaw, told Mathews that Peggy may be at the Knot Here Lounge. Mathews responded that he had made a bomb and was going to blow up the bar.

Peggy spent most of the evening at the bar with some friends. Mathews went to the bar on two occasions and, at some point, confronted Peggy about her dancing with another man.

Around 11:00 p.m. that night, Tracey Pickett arrived at the bar. After she found a table, Pickett walked into the hallway to use the telephone. As she talked on the phone, Pickett observed a man she later identified as Mathews bend down toward the floor and then exit the bar through the east door. Immediately thereafter, a fire broke out near the east doorway. Karen McCloud grabbed Pick-

ett and led her into a large kitchen cooler to escape from the fire. Flames quickly engulfed the bar as people fled outside.

Several people suffered injuries, including one of the firemen who responded to the emergency call. McCloud ultimately died of smoke inhalation. The fire department conducted an investigation and determined that someone had intentionally set the fire by pouring gasoline in the hallway near the east door and lighting it. The building sustained $100,000 in damages.

The following morning, Mathews' son Nathan and his then fiancée Amy Jo found Mathews asleep in their home. Mathews asked if he could move in with the couple, and they agreed. Amy Jo noticed that Mathews' arms had been singed by fire. Later that day, Mathews told Amy Jo that he had become upset when he saw Peggy dancing with another man. He also told her that he took a gasoline container from his truck, poured gasoline in the hallway of the bar, lit it, and then drove away in his truck with the lights off. Later, when police questioned Mathews about the fire, he denied that he had had anything to do with it.

The State charged Mathews with murder, attempted murder, six counts of Class A felony arson, and three counts of Class B felony arson. The State later dismissed Counts II and IX and renumbered the remaining counts as follows: Count I, murder; Counts II through VII, Class A felony arson; and Counts VIII and IX, Class B felony arson. Mathews' jury trial occurred from May 8–12, 1995. One of the instructions at trial consisted of the charg-

ing information, which provides in relevant part:

## COUNT I

Dorsey L. Mathews, on or about September 16, 1994, did knowingly kill another human being, namely: Karen McCloud, while committing the crime of Arson, thereby inflicting mortal injuries upon Karen McCloud, causing Karen McCloud to die[.]

Appellant's App. at 240. The trial court also instructed the jury on the murder charge in relevant part as follows:

The crime of murder is defined by statute as follows:

A person who knowingly or intentionally kills another human being, or kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, [kidnapping], rape or burglary, commits murder, a felony.

To convict the defendant, [Dorsey] L. Mathews, of the crime of murder, a felony, as charged in Count I of the Information, the State must prove each of the following elements:

The defendant on or about September 16, 1994[:]

1. knowingly
2. killed
3. Karen McCloud while committing the crime of arson, thereby inflicting mortal injuries upon Karen McCloud, causing Karen McCloud to die.

*Id.* at 248, 275.[1] The jury found Mathews guilty of all charges.

---

1. The trial court gave two instructions which set forth the elements of murder, namely, Instruction Nos. 8 and 29, both of which are identical except for the following: (1) Instruction No. 8 sets forth the elements of murder and then concludes "The State must prove each of these elements beyond a reasonable doubt[,]" Appellant's App. at 248; and (2) Instruction No. 29 sets forth the elements of murder and then informs the jury that if the State proved each of those elements, it should find Mathews guilty of murder, and that if the

Following a sentencing hearing, the trial court identified the following three aggravating factors: (1) "the nature of the crimes are such that less than an enhanced sentence would depreciate the seriousness of the offense," Transcript at 974; (2) Mathews is in need of corrective treatment that can only be found in a prison setting; and (3) Mathews showed no remorse. The court identified a single mitigating factor, namely, Mathews had led a law-abiding life. The court found that the aggravators outweighed the mitigators and imposed the following sentence: sixty years for murder; forty-five years on Count II (Class A felony arson resulting in serious bodily injury) to be served consecutive to the murder sentence; twenty-five years each on Counts III through VII (Class A felony arson) to be served concurrent with Count II; twenty years on Count VIII (Class B felony arson) to be served consecutive to Count II; and twenty years on Count IX (Class B felony arson) to be served consecutive to Count VIII. This belated appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Murder Instruction

Mathews first asserts that the trial court erred when it instructed the jury on the murder charge. Specifically, he contends that the State's charging information conflated the separate crimes of murder and felony murder and that the murder in-

State did not prove each of the elements, it should find Mathews not guilty. The court gave Instruction No. 8 as a preliminary instruction and Instruction No. 29 as a final instruction. For purposes of this appeal, and because both instructions contain the same language defining the elements of murder, we only refer to Instruction No. 29.

2. The State erroneously states in its Statement of Facts that Mathews objected to the relevant instruction prior to trial and later during a conference on the final instructions.

struction was erroneous because it failed to set forth the elements of arson, the underlying felony.

■■■ Because Mathews did not object to the murder instruction at trial or tender his own instruction, he may not present this claim on appeal. *See Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002).[2] However, to avoid procedural default, he contends that the instruction constitutes fundamental error.

> The "fundamental error" rule is extremely narrow, and [it] applies only when the error constitutes a blatant violation of basic principles, the harm or potential harm is substantial, and the resulting error denies the defendant fundamental due process.

> When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions. There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law.

*Id.* (citations omitted).[3]

■■■ The murder statute in effect at the relevant time provided in part:

But the State objected to the murder instruction, not Mathews.

3. We reject the State's argument that Mathews has waived his jury instruction argument because he failed to comply with Indiana Appellate Rule 46(A)(8)(e), which requires the appellant to include in his brief the verbatim instructions he is challenging, along with the verbatim objections made at trial. Although Mathews did fail to include the verbatim murder instruction in his brief, he has provided proper citations to the relevant instruction, a

A person who:

(1) knowingly or intentionally kills another human being; [or]

(2) kills another human being while committing or attempting to commit arson, burglary, child molesting, consumer product tampering, criminal deviate conduct, kidnapping, rape, robbery, or carjacking;

\* \* \*

commits murder, a felony.

Ind.Code § 35–42–1–1 (1994). "The crimes of murder and felony murder each contain elements different from the other but are equal in rank." *Schiro v. State*, 533 N.E.2d 1201, 1208 (Ind.1989), *cert. denied*. For example, to convict a defendant of murder, the State must prove a "knowing or intentional" killing. *See* I.C. § 35–42–1–1(1) (1994). But to convict a defendant of felony murder, the State must prove that a killing occurred while the defendant committed or attempted to commit one of several felonies. *See* I.C. § 35–42–1–1(2) (1994).

The charging information in this case refers neither to subsection (1) nor (2) of the murder statute; rather, it cites generally to Indiana Code Section 35–42–1–1. On the one hand, the language of the information mirrors subsection (2) in that it provides that Mathews knowingly killed "another human being, namely: Karen McCloud, *while committing the crime of Arson* [.]" Appellant's App. at 240 (emphasis added). On the other hand, the information could be interpreted as charging murder under subsection (1) to the extent

that it alleges that Mathews *knowingly killed* McCloud while committing arson, "thereby inflicting mortal injuries upon [her], causing [her] to die." *Id.*

As the State points out, "the deputy prosecutor appeared to be confused as to whether the information charged murder or felony[ ] murder, but she did argue to the trial court that the charging [i]nformation in Count I charged felony[ ] murder." Brief of Appellee at 8.[4] This comports with Mathews' assertion in his brief that "this was fundamentally an arson case[.]" Brief of Appellant at 8. To that end, Mathews maintains that fundamental error occurred because the elements of arson, the underlying felony, appear nowhere in the murder instruction.

First, we agree with Mathews that to sustain a felony murder conviction, the State must prove each element of the underlying felony. *See Murray v. State*, 761 N.E.2d 406, 409–10 (Ind.2002) (explaining where State charged defendant with felony murder with burglary as underlying felony, State had to prove elements of burglary); *see also Kelly v. State*, 813 N.E.2d 1179, 1183 (Ind.Ct.App.2004) ("A felony murder conviction requires proof of intent to commit the underlying felony but not of intent to kill."), *trans. denied*. However, he directs us to no case which holds that a jury instruction which sets forth the elements of felony murder must also contain the elements of the underlying felony. Put another way, Mathews cites no authority to support his argument that the elements of the underlying felony, namely, arson, must appear in the

copy of which he included in his Appellant's Appendix. In addition, because he did not object to the murder instruction at trial, the remainder of that rule does not apply here.

**4.** As we noted, the State, not Mathews, objected to the murder instruction at trial. Specifically, the State argued that it was error to have the "knowingly" element in the instruction because the State did not have to prove a knowing killing to convict Mathews of felony murder. The State later tendered its own instruction, which the trial court rejected.

*very same instruction* which defines the crime of felony murder.

But even assuming the instruction were erroneous for failing to set forth the elements of arson, we have already explained that our courts "will find fundamental error in the giving of instructions only if the instructions read together as a whole fail to alleviate any harm that might have occurred from one erroneous instruction." *Emerson v. State,* 695 N.E.2d 912, 916 (Ind.1998). Here, immediately following the murder instruction at issue, the trial court instructed the jury regarding the crime of arson in relevant part as follows:

> The crime of arson is defined by statute as follows:
>
> A person who, by means of fire or explosive, knowingly or intentionally damages a dwelling of another person under circumstances that endanger human life, or property damage of another person without his consent if the pecuniary loss is at least $5,000, commits arson, a Class [B] felony. However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any other person.

*Id.* at 249, 276. The court also told the jury to consider all of the instructions together. And during closing argument, the State commented, on at least two occasions, that to convict Mathews of felony murder, it had to prove that he knowingly set the fire which resulted in death. Thus, the jury was apprised of all the essential elements of felony murder, including the elements of arson, and it is highly improbable that the jury was misled as to an accurate legal understanding of felony murder. *See Boesch,* 778 N.E.2d at 1280 (concluding defendant failed to show fundamental error in jury instructions where instructions as a whole, along with defense counsel's closing argument, adequately informed jury of law regarding sudden heat).

Mathews has not established that fundamental error occurred.

Mathews also points out that because there was a general verdict form in this case, there is no way to confirm of what crime he was convicted and, thus, that this case is like *Hobson v. State,* 675 N.E.2d 1090 (Ind.1996). But *Hobson* is distinguishable. A jury found Hobson guilty of Murder; Rape, a Class A felony; Criminal Confinement, a Class B felony; and Criminal Deviate Conduct, a Class B felony. *See id.* at 1091. On appeal, Hobson challenged the giving of a general verdict form on the murder charge because of a discrepancy between the charging information and jury instructions. Specifically, the information charging murder alleged in relevant part that Hobson "did ... knowingly or intentionally kill another human being, to wit: stabbed to death Melissa Draus[.]" *Id.* at 1093. The trial court, however, gave the jury a murder instruction "which was broader than the knowingly-or-intentionally murder theory contained in the information." *Id.* That instruction provided:

> Instruction No. 3.01—Murder
>
> I.C. 35–42–1–1.
>
> The crime of murder is defined by statute as follows: A person who knowingly or intentionally kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery commits murder, a felony.
>
> To convict a defendant, the State must prove each of the following elements:
>
> The defendant (1) knowingly or intentionally (2) killed (3) Melissa Draus[;] or
>
> The defendant (1) killed (2) Melissa Draus (3) while committing or attempt-

ing to commit criminal deviate conduct or rape. *Id.* And the court gave the jury a verdict form which read: "We, the Jury, find the Defendant, Brett Hobson, guilty of Murder, Count I." *Id.*

Hobson did not object to the murder instruction at trial, and, thus, our supreme court analyzed whether the instruction constituted fundamental error. The court determined that the general verdict form left "no way to determine if Appellant ha[d] been convicted of intentional or felony murder," and, thus, the court could not "know if Appellant ha[d] been sentenced separately for both the felony and the felony murder charge." *Id.* at 1094. Again, the jury found Hobson guilty not only of murder, but also of rape and criminal deviate conduct, both of which could have served as the underlying felony in a felony murder charge. And the trial court sentenced him on all of those convictions, in addition to the criminal confinement conviction, for a total of 180 years. Accordingly, the general verdict form was problematic because (1) given the discrepancy between the charging information and the instructions, it was unclear of which crime Hobson had been convicted in Count I, and (2) there was no way of knowing whether Hobson had been erroneously convicted of and sentenced for both felony murder and the underlying felony. The court therefore vacated Hobson's murder conviction and remanded for a new trial on that count. *See id.* at 1094–95.

In this case, there is no discrepancy between the charging information and the murder instruction. Rather, the murder instruction mirrors the language of the information. Therefore, unlike in *Hobson*, the murder instruction did not allow the jury to convict Hobson on a theory not contained in the information.

Additionally, if the jury found Mathews guilty based on a theory of felony murder, this case does not present the same double jeopardy concerns at issue in *Hobson*. Each of the separate charges in this case pertained to different victims,[5] and Count I alleged the murder of Karen McCloud. In other words, unlike in *Hobson*, Mathews was not convicted of an underlying arson charge that related to McCloud. Accordingly, even with the general verdict form, we can be sure that the trial court did not enter judgment of conviction on both the murder charge (felony murder) and the underlying felony of arson. We conclude that Mathews' reliance on *Hobson* is misplaced.

Finally, the general verdict form in this case provides: "We, the jury, find the defendant Dorsey L. Mathews guilty of the crime of murder *as charged in Count I of the Information.*" Appellant's App. at 371 (emphasis added). Our review of the record reveals that the State presented two theories of murder, namely, intentional murder and felony murder. We agree with the State that the charging information and the jury instructions as a whole adequately explained to the jury the elements the State had to prove to convict Mathews on either of those theories, and there was evidence to support his conviction under either theory. Again, Mathews makes no claim that he was erroneously convicted and sentenced for felony murder and the underlying felony of arson. Therefore, even if we cannot be sure on which theory the jury found Mathews

---

5. Counts VIII and IX alleged arson as Class B felonies and both damage to property owned by Robert Stogsdill. We discuss Mathews' double jeopardy claims in detail in Issue Two, *infra*. Mathews does not assert that his murder conviction presents a double jeopardy problem.

guilty, he has not demonstrated that the murder instruction "constitutes a blatant violation of basic principles, the harm or potential harm is substantial, and the resulting error [denied him] fundamental due process." *Boesch*, 778 N.E.2d at 1279.

### Issue Two: Double Jeopardy

■ Next, Mathews asserts that several of his arson convictions violate either federal or state double jeopardy principles. Whether convictions violate double jeopardy is a question of law which we review de novo. *See Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind.Ct.App.2002).

### A. Counts VIII and IX [6]

Mathews first asserts that his arson convictions in Counts VIII and IX violate (1) the actual evidence test under Article I, Section 14 of the Indiana Constitution, and (2) common law double jeopardy principles. As this court recently explained in *Vandergriff v. State*, 812 N.E.2d 1084, 1086 (Ind.Ct.App.2004), *trans. denied:*

> "Two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." ... [T]he actual evidence test ... "prohibits multiple convictions if there is a 'reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" The defendant must show that the evidentiary facts establishing the elements of one offense also establish all of the elements of the sec-

ond offense. Thus, even if "each charge utilizes the same factual event," no constitutional violation will be found if the second offense "requires additional evidentiary facts establishing the essential elements."

(Citations omitted, emphasis original).

Here, Counts VIII and IX both charge Mathews with arson, as a Class B felony. Specifically, those charges provide:

COUNT VIII

Dorsey L. Mathews, on or about September 16, 1994, did, by means of fire, knowingly damage property, that is: a structure situated at 201 Main Street, Beech Grove, Indiana, of Robert Stogsdill, under circumstances that endangered human life, that is: set fire to said structure in which multiple persons were present;

COUNT IX

Dorsey L. Mathews, on or about September 16, 1994, did, by means of fire, knowingly damage property, that is: a structure situated at 201 Main Street, Beech Grove, Indiana, of Robert Stogsdill, without the consent of Robert Stogsdill, in which the pecuniary loss was at least five thousand dollars ($5,000.00)[.]

Appellant's App. at 47–48. At the relevant time, Indiana Code Section 35–43–1–1 (1986) provided in part as follows:

(a) A person who, by means of fire or explosive, knowingly or intentionally damages:

 (1) a dwelling of another person without his consent;

 (2) property of any person under circumstances that endanger human life; or

---

6. Mathews refers to the counts as charged in the original information, but we, like the State, refer to the counts as charged in the amended information.

(3) property of another person without his consent if the pecuniary loss is at least five thousand dollars ($5,000);

commits arson, a Class B felony.

■ Again, for Mathews' convictions on Counts VIII and IX to violate the actual evidence test, he must show that the evidentiary facts establishing the elements of one offense also establish *all* of the elements of the second offense. *See Vandergriff,* 812 N.E.2d at 1086. To prove that Mathews committed Class B felony arson as alleged in Count VIII, the State had to present evidence of endangerment, namely, evidence that multiple persons were inside the bar when Mathews set the fire. To prove that Mathews committed Class B felony arson as charged in Count IX, the State had to present evidence that Stogsdill sustained a pecuniary loss of at least $5,000. Thus, even though the jury had to rely on the same incident, namely, the setting of the fire, to establish the two offenses, additional evidentiary facts were required to prove each offense. *See id.* at 1087. We therefore conclude that Mathews' convictions for Counts VIII and IX do not violate the actual evidence test.

■ Still, "[e]ven where no constitutional violation has occurred, multiple convictions may nevertheless violate the 'rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in [*Richardson v. State,* 717 N.E.2d 32 (Ind.1999) ].'" *Id.* at 1088. In support of his argument that a common law violation occurred, Mathews directs us in part to our recent opinion in *Montgomery v. State,* 804 N.E.2d 1217, 1224–25 (Ind.Ct.App.2004), *trans. denied.* In *Montgomery,* the defendant was convicted of two counts of arson involving the

same victim. *See* Ind.Code § 35–43–1–1(a)(1) (providing that person who, by means of fire, knowingly or intentionally damages a dwelling of another without person's consent commits arson, as Class B felony); Ind.Code § 35–43–1–1(a)(3) (person who, by means of fire, knowingly or intentionally damages property of another person without person's consent and pecuniary loss is at least $5,000 commits arson, as Class B felony). Based on our opinions in *Clark v. State,* 732 N.E.2d 1225 (Ind.Ct.App.2000), and *Belser v. State,* 727 N.E.2d 457 (Ind.Ct.App.2000), *trans. denied,* which are two cases decided after *Richardson* finding common law violations for multiple arson convictions, we concluded that Montgomery's dual arson convictions violated common law principles and could not stand.

*Montgomery* is directly on point. Like the defendant in that case, Mathews was convicted of two Class B felonies under the prior version of the arson statute, and both convictions involved the same victim. In particular, Montgomery's convictions were based on subsections (a)(1) and (a)(3) of the statute, while Mathews' Class B felony convictions are based on subsections (a)(2) and (a)(3). Following our recent holding in *Montgomery,* we conclude that Mathews' two Class B felony arson convictions in Count VIII and IX are barred under the common law. *See also Martin v. State,* 488 N.E.2d 1160, 1162 (Ind.Ct.App.1986) (holding two counts of arson could not stand where single dwelling owned by victim, or victim with mortgage held by bank, had been burned), *trans. denied.* We therefore remand with instructions to the trial court to vacate Count IX.

### B. Counts II through VII

Mathews also asserts that his convictions in Counts II through VII violate both

federal and state double jeopardy.[7] In particular, he claims that each count was based on a violation of the previous version of Indiana Code Section 35–43–1–1(a)(2), which provided in part that a person who, by means of fire, knowingly or intentionally damages property of any person under circumstances that endanger human life commits arson, as a Class B felony. And each of those six counts was enhanced and charged as a Class A felony because each alleged either bodily injury (Count II) or serious bodily injury (Counts III through VII) to six different people who were inside the bar when the fire occurred. *See id.* (stating arson is Class A felony if it results in either bodily injury or serious bodily injury to any other person). The State responds that Mathews' multiple Class A felony convictions violate neither federal nor state double jeopardy law. We must agree with the State.

### i. Federal Double Jeopardy

■ Mathews' federal double jeopardy claim is governed by *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger,* the Supreme Court recognized that not all claims of double jeopardy violations arise in the same manner. Specifically, some criminal acts may violate *multiple criminal statutes.* In those situations, the Court held: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not." *Id.* at 304, 52 S.Ct. 180. But double jeopardy can also be implicated when a criminal act results in *multiple charges based*

*on the same criminal statute.* In those situations, " '[t]he test is whether the individual acts are prohibited, or the course of action which they constitute. If the former [i.e., individual acts are prohibited], then each act is punishable separately ... If the latter [i.e., course of action prohibited], there can be but one penalty.' " *Id.* at 302, 52 S.Ct. 180 (citation omitted).

■ Here, Mathews' Class A felony convictions fall under the second category, namely, multiple charges based on the same criminal statute. Again, the State charged Mathews with six separate counts of violating Indiana Code Section 35–43–1–1(a)(2), all of which were enhanced to Class A felonies as a result of bodily or serious bodily injury. Thus, we must determine whether subsection (a)(2) of the arson statute prohibits individual acts or a course of action. Under *Blockburger,* if the statute prohibits individual acts, then Mathews may be punished separately for each victim. But if the statute prohibits a course of action, only one of his six convictions may stand. To do this, we look to cases which have interpreted the arson statute. *See Burleson v. Saffle,* 278 F.3d 1136, 1143 (10th Cir.2002) (certifying question of state law because *Blockburger* analysis depended on state court's interpretation of Oklahoma criminal statute).[8]

Among the few cases which have examined the arson statute, we find one case particularly instructive, namely, *Bustamante v. State,* 557 N.E.2d 1313, 1323 (Ind.1990). In that case, our supreme court explained subsection (a)(2) of the arson statute as follows:

---

7. Mathews includes Count IX in this argument, but we have already concluded that Count IX cannot stand.

8. In their briefs, the parties discuss only the *Blockburger* statutory elements test. But as we have explained, that test applies where criminal acts violate multiple criminal statutes.

Indiana Code [Section] 35–43–1–1 criminalizes the destruction of property by fire and assesses criminal penalties for such acts, the severity of which depends on the identity of the property owner, the value of the property, the circumstances of or motivation for the crime, and the infliction of injury.

\* \* \*

*The focus of [subsection (a)(2)] is the protection of human life, not of property. It is the only part of the arson statute in which penalty attaches based solely on the risk or actual infliction of injury and irrespective of whose property is damaged, the value of the property or the motivation of the perpetrator.* Under subsection (a)(2), the mere creation of risk of injury by means of fire [, *i.e.,* endangerment,] is a B felony; if that risk is realized, the crime is elevated to an A felony.

(Emphasis added). We read *Bustamante* to mean that subsection (a)(2) is a unique provision in the arson statute because it focuses on the risk or actual infliction of injury *to other persons.* Accordingly, subsection (a)(2) is similar to any other criminal statute that prohibits the risk or actual infliction of injury others, including confinement or murder. Viewed in that way, we would be hard-pressed to conclude that confinement or murder prohibits a course of action. Rather, those crimes prohibit individual acts, and a defendant may be punished separately for each victim. *See Burnett v. State,* 736 N.E.2d 259, 263 n. 3 (Ind.2000) (stating multiple confinement convictions do not violate double jeopardy where there are multiple victims), *overruled on other grounds by Ludy v. State,* 784 N.E.2d 459 (Ind.2003); *Guyton v.*

*State,* 771 N.E.2d 1141, 1151 (Ind.2002) (Boehm, J., concurring) (explaining that same act of burning down house can result in two murders if there are two victims). Because there is no meaningful difference between the purpose of subsection (a)(2) and other criminal statutes which punish crimes against other persons, we must conclude that subsection (a)(2) prohibits an individual act, not a course of action. Therefore, under *Blockburger,* subsection (a)(2) contemplates a separate penalty for each person who is placed at risk or actually injured by a defendant's actions, and Mathews' convictions for Counts II through VII do not violate federal double jeopardy.[9]

### ii. State Common Law and Constitutional Double Jeopardy

◼ Mathews raises several arguments why, under the common law and Indiana's actual evidence test, his six Class A felony arson convictions cannot stand, and the State responds with an equal number of arguments to the contrary. But the dispositive question is whether the fact that each of the six Class A felony arson convictions alleged different victims defeats Mathews' double jeopardy claims under Indiana law. We hold that it does.

Our supreme court has repeatedly stated that where convictions arise from a situation where separate victims are involved, no double jeopardy violation exists. *See, e.g., Bald v. State,* 766 N.E.2d 1170, 1172 n. 4 (Ind.2002) (rejecting alleged hybrid common law double jeopardy violation because defendant's convictions arose from situation where separate victims were involved, which does not constitute double jeopardy); *Guyton,* 771 N.E.2d at 1151

---

**9.** This opinion is limited to whether subsection (a)(2) prohibits an individual act or a course of action under *Blockburger* and should not be interpreted as addressing any other provision of the arson statute for purposes of federal double jeopardy.

(Boehm, J., concurring) (explaining that burning down house can result in two murder convictions if there are two victims); *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring) (stating no double jeopardy relief provided where separate victims involved).[10] In addition, in two recent opinions this court has held that multiple arson convictions do not violate double jeopardy where multiple victims are involved. Specifically, in *Land v. State*, 802 N.E.2d 45, 52 (Ind.Ct.App.2004), *trans. denied*, we found no double jeopardy violation where the defendant set a dwelling on fire and caused property damage to the home, which was owned by Griffith, and also damaged personal property inside the home, which belonged to Eaton.[11] Because Land's convictions arose from a situation where separate victims were involved, we held that his Class B felony (damage to Griffith's dwelling) and Class D felony (damage to Eaton's property) arson convictions could both stand. *See id.*

In *Williamson v. State*, 798 N.E.2d 450, 450 (Ind.Ct.App.2003), *trans. denied*, we addressed an ineffective assistance of counsel claim where the defendant argued that his appellate counsel was deficient for failing to raise a double jeopardy claim on direct appeal. Williamson started a fire in a gift shop he owned in Nashville, Indiana, and the fire spread to other shops, eventually causing the entire mall structure to collapse. Williamson was convicted of five counts of Class B felony arson. Each count named a different victim whose property sustained a pecuniary loss of at least $5,000. *See* I.C. § 35–43–1–1(a)(3).[12]

Williamson's appellate counsel filed his brief nineteen days before our supreme court decided *Richardson*. After reviewing case law in effect at the time of his appeal, we concluded that Williamson's counsel was not deficient for failing to raise a double jeopardy claim because each arson conviction involved a separate victim. *See id.* at 455. Additionally, we examined post-*Richardson* cases and concluded that those cases further supported the holding that a single act which produces multiple victims does not implicate double jeopardy. *See id.* at 456. Thus, we find overwhelming authority in support of our conclusion that Mathews' state double jeopardy claims fail because each count involves a separate victim.

Still, this court has strayed from the "single act, multiple victim" double jeopardy rule on two occasions, and we discussed both of those decisions in *Williamson*. In *Alexander v. State*, 600 N.E.2d 549, 554 (Ind.Ct.App.1992), the defendant was convicted of Class A felony arson and two counts of Class B felony arson. We con-

---

10. To be clear, in explaining common law category number four, which is "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished," Justice Sullivan stated that "where separate victims are involved ... no relief will be provided." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring). However, in *Bald*, 766 N.E.2d at 1172 n. 4, which was a unanimous decision, the court relied on Justice Sullivan's statement regarding separate victims in *Richardson* to support its conclusion that convictions for Class A felony arson and three counts of felony murder did not violate double jeopardy because separate victims were involved in each count.

11. *See* Ind.Code § § 35–43–1–1(a)(1), (d).

12. *Williamson* states that "each charge in the information names a different victim whose property worth at least $5,000 was destroyed by the blaze that Williamson started[.]" 798 N.E.2d at 456. We believe this was a typographical error because the arson statute contains no such provision. We further note that the defendant in *Williamson* raised no federal double jeopardy claim.

cluded that, even though each count concerned a different victim, only the Class A felony arson conviction could stand. We based that conclusion on the following:

> [T]he definition of arson does not require injury to a person. Rather, the result of bodily injury (or serious bodily injury) elevates arson from a Class B to a Class A felony. If the legislature had intended multiple egregious results to increase the number of crimes rather than the penalty, it could have done so.

*Id.* (citations omitted). But that interpretation of the arson statute appears to conflict with the discussion of subsection (a)(2) in *Bustamante.* In addition, the panel in *Alexander* addressed an alleged constitutional double jeopardy violation before our supreme court had decided *Richardson.* Therefore, *Alexander* is not instructive.[13]

More recently, a panel of this court decided *Belser.* In that case, the defendant set a dwelling on fire while several people were inside. 727 N.E.2d at 460. The State charged him with a total of five counts, namely, one count under Indiana Code Section 35–43–1–1(a)(1) for damaging the dwelling of Andrea Ryans, and three counts under Indiana Code Section 35–43–1–1(a)(2) for endangering human life. Counts II through V each alleged that a separate person's life had been endangered by the fire. *See id.* at 460–61.

Applying the statutory elements test, we concluded that only one of Belser's endangerment convictions under subsection (a)(2) could stand because the essential elements of each count overlapped. In so holding, the panel in *Belser* disregarded the fact that each of those counts alleged a risk of harm to a separate victim and identified the essential elements of subsection (a)(2) as follows: Belser (1) by means

of fire or explosive (2) knowingly or intentionally (3) damaged (4) the property of Andrea Ryans (5) under circumstances that endangered human life. *See id.* at 461. The panel also concluded under the actual evidence test that there was "more than a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of arson as charged in Count I" also established the essential elements of arson as charged in Counts II through V. *Id.* at 462. In addition, the panel identified what it called a "hybrid of the [common law] double jeopardy violations Justice Sullivan discuss[ed] in his concurring opinion in *Richardson.*" *Id.* Accordingly, the panel held that Belser's conviction in Count I alone could stand.

Regarding the statutory elements test, we respectfully disagree with the *Belser* panel's articulation of the essential elements of arson under subsection (a)(2). When the State alleges a specific victim of endangerment, proof that *that particular person* was inside the building when the defendant set the fire is an essential element of the offense. Likewise, here, the State alleged that six different people were injured by the fire at the bar. Thus, it had to prove not only each person's presence at the time of the fire but also their specific injuries. Indeed, it is a more serious crime to set fire to a building where one hundred people are present than it is to set fire to a building where only one person is present. And our supreme court has suggested as much when it recognized in *Bustamante*, 557 N.E.2d at 1323, that subsection (a)(2), which punishes risk to or the actual infliction of injury to persons, is different from the other provisions of the

---

13. In *Williamson*, 798 N.E.2d at 454–55, this court also questioned a separate part of the double jeopardy analysis in *Alexander*.

arson statute. In our view, the different victims in *Belser* served as the distinguishing statutory element between the four Class B felony arson counts.

Regarding the actual evidence test, it is significant that at the time *Belser* was decided, our supreme court had not yet clarified the actual evidence test in *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002). Two years after *Belser*, our supreme court stated that "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Id.* In light of *Spivey*, and because of the different victims in each count, we conclude that *Belser* is an anomaly.

Finally, the *Belser* panel's analysis of the hybrid common law violation conflicts with our supreme court's more recent opinion in *Bald*. When faced with a similar argument that a hybrid common law violation had occurred, the court in *Bald* dismissed the claim on the grounds that Bald's convictions arose from a situation " 'where separate victims [were] involved,' which has been a scenario that does not constitute double jeopardy." 766 N.E.2d at 1172 n. 4 (quoting *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)). And although we indirectly rely on the common law discussion in *Belser* to hold that Mathews' convictions in Counts VIII and IX cannot stand,[14] we reiterate that Counts VIII and IX involved the same victim. Therefore, we decline to follow *Belser* regarding Mathews' Indiana double jeopardy claims. Instead, consistent with both this court's and our supreme court's double jeopardy decisions, we hold that Mathews may be convicted and sentenced

for each of the six counts of Class A felony arson because, while arising from a single act of arson, six separate persons suffered actual injury under subsection (a)(2). Therefore, Mathews' convictions in Counts II through VII do not violate double jeopardy under Indiana law.

### Issue Three: Consecutive Sentences

Mathews also maintains that the trial court erred when it ordered him to serve several of his sentences consecutive to one another under Indiana Code Section 35–50–1–2, which in 1994 provided in relevant part:

(a) Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, *except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.*

(Emphasis added).[15]

◼ As our supreme court stated in *Greer v. State*, 684 N.E.2d 1140, 1142 (Ind.

---

**14.** Specifically, regarding Counts VIII and IX, we follow this court's holding in *Montgomery*,

804 N.E.2d at 1225, which relies in part on the common law discussion in *Belser*.

**15.** The parties agree that the 1994 version of

1997), "[a]pplication of this statute requires several steps." We first identify the presumptive sentence for a felony that is one class higher than the most serious felony that defendant was charged with. *Id.* Here, the most serious felony Mathews was convicted of was murder, which at that time had a presumptive term of forty years. *See* Ind.Code § 35–50–2–3 (1988). Since there is no felony higher than murder, the presumptive sentence of forty years for murder is the maximum term of imprisonment that Mathews may be sentenced to for his convictions arising out this single episode of criminal conduct except for "murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury." *See id.* (quoting I.C. § 35–50–1–2(a)).

■ The next step of the analysis requires us to determine whether any of the convictions for which Mathews received consecutive sentences constitute convictions for which he (1) received an enhanced penalty because the felony resulted in serious bodily injury and, if so, (2) whether he knowingly or intentionally caused serious bodily injury. *See id.* The trial court sentenced Mathews as follows:

Count I Murder; enhanced term of 60 years

Count II Class A felony arson; enhanced term of 45 years, consecutive to Count I

Count III Class A felony arson; 25 years

Count IV Class A felony arson; 25 years

Count V Class A felony arson; 25 years

Count VI Class A felony arson; 25 years

Count VII Class A felony arson; 25 years

Count VIII Class B felony arson, enhanced term of 20 years, consecutive to Count II

Count IX Class B felony arson, enhanced term of 20 years, consecutive to Count VIII

Therefore, we must determine whether the trial properly ordered consecutive sentences in Counts II, VIII, and IX.

We have already concluded that Mathews' conviction in Count IX violates double jeopardy under the common law. *See* Issue Two, *supra.* Therefore, on remand, the trial court must vacate that conviction, along with the corresponding order that the sentence in that count be served consecutive to the sentence in Count VIII. That reduces Mathews' total sentence to a term of 125 years. Therefore, we need to determine whether enhanced penalties were imposed in Counts II and VIII because (1) the felony resulted in serious bodily injury, and, if so, (2) whether Mathews knowingly or intentionally caused the serious bodily injury.

■ Count II is the Class A felony arson charge that alleged serious bodily injury to Tracy Pickett, the woman who had walked into the hallway of the bar to use the telephone. The State presented evidence at trial that Pickett suffered from carbon monoxide poisoning, she was unconscious and did not have a pulse when the firefighters arrived, and continued to go in and out of consciousness for several days after the fire. The State also presented evidence that, as of the date of the trial, Pickett continued to have vision and speech difficulties.

Indiana Code Section 35–41–1–25 defines "serious bodily injury" in relevant

the consecutive sentencing statute applies even though Mathews was not sentenced until

1995. *See* Brief of Appellant at 23; Brief of Appellee at 19 n. 2.

part as bodily injury that creates a substantial risk of death or that causes unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ. The State presented evidence to show that Pickett's injuries fall within the definition of serious bodily injury. In addition, the jury convicted Mathews of Class A felony arson in which a knowing or intentional mens rea was an element and in which serious bodily injury occurred. *See Greer,* 684 N.E.2d at 1143. And although the trial court did not specifically state at the sentencing hearing that it was enhancing Mathews' sentence in Count II because of Pickett's serious bodily injury, the court did suggest that among the reasons for imposing enhanced and consecutive sentences was that the arson in this case was "akin to domestic terrorism" and "could result in the deaths of more innocent victims than almost any crime besides terrorism." Transcript at 974. The court also found as an aggravating factor that "less than an enhanced sentence would depreciate the seriousness of the offense." *Id.* Thus, it is reasonable to conclude that the trial court's decision to enhance Mathews' sentence in Count II was made, at least in part, because of the serious bodily injuries Pickett sustained. *See Greer,* 684 N.E.2d at 1143 (concluding although trial court's sentencing order did not explicitly state that it had enhanced defendant's sentences because of serious bodily injury to victims, court's statement regarding seriousness of totality of crimes was sufficient reference to serious bodily injury). We conclude that the trial court did not err when it ordered Mathews to serve his enhanced forty-five-year sentence in Count II consecutive to his sixty-year sentence in Count I.

▪ Similarly, the State claims that Pickett's serious bodily injuries, along with McCloud's death, justify the court's decision to order that Count VIII be served consecutively. But Count VIII alleged that Mathews knowingly damaged Stogsdill's property under circumstances that endangered human life. Count VIII did not allege serious bodily injury, and the State did not prove serious bodily injury in support of that conviction. Therefore, the statutory exemption from the term of imprisonment limitation imposed by Indiana Code Section 35–50–1–2(a) does not apply to Count VIII, which is neither a murder conviction nor a felony conviction for which Mathews received an enhanced sentence due to the infliction of serious bodily injury. *See Ellis v. State,* 736 N.E.2d 731, 740 (Ind.2000) (Boehm, J., dissenting in part) (discussing history of statute and stating that under 1994 version, arson exempt from restriction on consecutive sentences only if it resulted in serious bodily injury).

Nevertheless, the facts of this case are similar to those we encountered in *Hollins v. State,* 790 N.E.2d 100, 106–09 (Ind.Ct. App.2003), *trans. denied,* where we applied the *Greer* analysis and held that the defendant's consecutive sentences did not violate Indiana Code Section 35–50–1–2(a). In *Hollins,* the defendant was convicted of two Class A felonies and Robbery While Armed with a Deadly Weapon, as a Class B felony, and the trial court ordered him to serve those terms consecutively. *Id.* at 107. We first observed that "[t]he only more serious felony is murder, for which the presumptive sentence in 1995 was forty years" and stated that: "[a]ccording to *Greer,* forty years would then be the maximum term of imprisonment that Hollins could be sentenced to for his convictions out of this episode of criminal conduct except for any felony conviction" enhanced because it resulted in serious bodily injury. *Id.* Next, we noted that Hollins' robbery conviction had not been enhanced due to the infliction of serious bodily inju-

ry and explained that "the statute simply imposes a formulaic cap *if* the sentence for that non-enhanced conviction sentence were ordered to be served consecutive to another non-enhanced conviction sentence." *Id.* at 107 (emphasis in original). We then determined that because the two Class A felonies had been enhanced due to the infliction of serious bodily injury, they fell within the statutory exemption from the consecutive sentencing limitation. *Id.* at 108–09. And because Hollins' ten-year sentence for robbery did not exceed the forty-year cap, we upheld the trial court's decision to impose consecutive sentences for all three convictions. *See id.* at 107, 109.

Here, Count VIII, like the robbery conviction in *Hollins,* was not enhanced because it resulted in serious bodily injury, and it was ordered to be served consecutive to an enhanced sentence which is exempt from the consecutive sentencing limitation, namely Count II. Thus, Mathews' twenty-year sentence for Count VIII does not exceed the forty-year statutory cap placed on consecutive sentences. *See id.* at 107, 109. We therefore conclude that the trial court did not err when it ordered Mathews to serve his twenty-year sentence in Count VIII consecutive to his forty-five-year sentence in Count II.

In sum, the trial court did not err when it ordered consecutive sentences in Counts II and VIII, but because we have ordered the trial court to vacate Mathews' conviction in Count IX, we reverse and remand with instructions to the trial court to re-sentence Mathews to a total term of 125 years.

### Issue Four: Inappropriate Sentence

Finally, Mathews asserts that the trial court abused its discretion when it sentenced him. Specifically, Mathews maintains that his sentence is inappropriate under Indiana Appellate Rule 7(B) because (1) the aggravating factors identified by the trial court are invalid, and (2) the court failed to give his lack of significant criminal history sufficient weight.

▇▇▇▇ Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. *Foster v. State,* 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003), *trans. denied.* However, we exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. *Id.* A sentence that is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *Id.* (citing Ind. Appellate Rule 7(B)).

The trial court identified the following aggravating factors: (1) the nature of the crimes were such that less than an enhanced sentence would depreciate the seriousness of the offense; (2) Mathews is in need of corrective treatment that can only be found in a prison setting, which was based on the evidence presented at the sentencing hearing that Mathews had aided in an escape attempt at the Marion County Jail; and (3) Mathews showed no remorse about the crimes. Mathews claims that the first aggravator is invalid because "invocation of the 'depreciate the seriousness of the offense' aggravator may only be properly used as a factor when the court is considering the imposition of a shorter sentence than the presumptive." Brief of Appellant at 27. But Mathews has confused two valid aggravating circumstances, both of which concern the depreciation of the seriousness of the defendant's crimes.

▇▇▇▇ Under Indiana Code Section 35–38–1–7.1(b)(4), the trial court may find as aggravating that the imposition of *a*

*reduced or suspended sentence* would depreciate the seriousness of the offense. (Emphasis added). And use of that factor is limited to circumstances where the trial court is considering a sentence less than the presumptive. *See Pickens v. State,* 767 N.E.2d 530, 533 (Ind.2002) (stating trial court improperly considered that imposition of reduced sentence or suspension of sentence would depreciate seriousness of offense because that factor "may be considered only to support the refusal to impose a sentence less than the presumptive."). But the trial court here did not rely on that factor. Rather, the court found that the nature of the crimes were such that *less than an enhanced sentence* would depreciate the seriousness of the offense. And our supreme court has concluded that that aggravator is valid. *See Walter v. State,* 727 N.E.2d 443, 447 (Ind. 2000); *Huffman v. State,* 717 N.E.2d 571, 577 (1999). Thus, the trial court did not err when it identified as aggravating that a sentence less than an enhanced sentence would depreciate the seriousness of the crimes.

 Mathews also contends that the trial court erred when it relied on his need for correctional treatment as aggravating because the court failed to explain its reasoning. When a court identifies a defendant's need for correctional and rehabilitative treatment at a penal facility for longer than the presumptive sentence as an aggravating factor, it "needs to explain why the defendant requires treatment beyond the presumptive sentence." *Bailey v. State,* 763 N.E.2d 998, 1004 (Ind.2002). Here, the trial court explained that the reason Mathews was in need of "corrective treatment that can only be found at a prison setting" was because Mathews had aided in an attempted escape from the jail. Transcript at 974. Thus, Mathews' claim

that the court failed to explain its reasoning for that aggravator lacks merit.

 Mathews next asserts that the trial court erred when it identified his lack of remorse as aggravating. In particular, he contends that he had a right to maintain his innocence and that the court could not hold that against him at sentencing. Initially, it is not clear whether the trial court considered Mathews' lack of remorse as a separate aggravating factor or in connection with the corrective treatment aggravator. The State reads the trial court's sentencing statement to mean that Mathews' actions of aiding in an escape attempt in the jail shows his lack of remorse about the crimes. And we note that the trial court did not list lack of remorse as a separate aggravator on the abstract of judgment. In any event, our supreme court has determined that a trial court may find a defendant's lack of remorse to be an aggravating factor. *Veal v. State,* 784 N.E.2d 490, 494 (Ind.2003). And to the extent that Mathews relies on *Angleton v. State,* 686 N.E.2d 803, 816 (Ind. 1997), to support his position that a court may not rely on a defendant's denial of guilt as aggravating, *Angleton* acknowledges the difference between lack of remorse and denial of guilt as aggravators. Indeed, that case states that while it is improper to rely on a defendant's maintaining his innocence as an aggravator, a court may use a defendant's lack of remorse as an aggravator. *Id.* at 816 n. 11. Here, the trial court did not mention Mathews' denial of guilt but rather that Mathews is "unrepentant[.]" Transcript at 974. We find no error.

 Finally, in arguing that his sentence is inappropriate, Mathews contends that the trial court failed to give enough weight to his lack of a significant criminal history. But the trial court recognized that Mathews had led a law-abiding life

**734**

and gave that factor mitigating weight. *See Perry v. State*, 751 N.E.2d 306, 309 (Ind.Ct.App.2001) (stating trial court solely responsible for determining weight to accord each mitigating circumstance). And because Mathews' Appellate Rule 7(B) argument hinges upon a conclusion that the aggravating factors are invalid, that claim must fail. We agree with the trial court that Mathews' actions created the potential for multiple deaths. In a fit of jealousy, Mathews set fire to a bar where several people were present. In addition, while in jail, Mathews aided in an escape attempt, which reflects poorly on his character. Thus, we conclude that Mathews' sentence, which on remand will be 125 years, is not inappropriate.

### CONCLUSION

We conclude that the murder instruction does not constitute fundamental error. We further conclude that none of Mathews' convictions violate double jeopardy except for Count IX, which we order the trial court to vacate. In addition, the consecutive sentence limitation was not violated in this case. Accordingly, we reverse and remand for the trial court to impose a sentence of 125 years. Mathews' sentence is not otherwise inappropriate under Indiana Appellate Rule 7(B).

Affirmed in part, and reversed and remanded in part.

KIRSCH, C.J., and VAIDIK, J., concur.